# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) 2:16-cr-00071 |
| | ) |
| v. | ) Chief Judge Mark R. Hornak |
| | ) |
| LEVI EUGENE BROWN, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

At issue are two *pro se* motions from Defendant Levi Eugene Brown: (1) a motion for Compassionate Release pursuant to 28 U.S.C. § 3582(c)(1)(A)(i), and (2) a motion for release pursuant to 28 U.S.C. § 2255. Mr. Brown wrote a *pro se* letter to the Court in December 2020 (ECF No. 53) requesting release to home confinement because he has health conditions that he argued pose a heightened risk of contracting severe illness from COVID-19. The Court interpreted this two-page letter as a motion for compassionate release under § 3582(c)(1)(A)(i) and ordered Mr. Brown's attorney of record to file a response.[1] Pursuant to the Court's order, the Government to responded opposing Mr. Brown's motion. (ECF No. 59.)

Mr. Brown later filed a Motion styled as an "Emergency Motion for Release Pursuant to § 28 U.S.C. 2255, for Fraud upon the Court to Sign a Plea, Fed. Rule 60(d)(3), Fourth, Fifth, and Sixth Amendment Violation, and for Cares Act due to COVID-19." (ECF No. 64.) Among other alleged constitutional violations, that Motion argues that a search violated Mr. Brown's Fourth

---

[1] In March 2020, Mr. Brown's attorney advised the Court that he did not intend to file a response on Mr. Brown's behalf.

1

Amendment rights and that Mr. Brown received ineffective assistance of counsel in violation of his Sixth Amendment rights. *Id.*

Both motions are now ripe for disposition. The Court finds Mr. Brown's habeas petition is untimely because it was filed outside of the one-year statute of limitations set forth in 28 U.S.C. § 2255(f). And although the Court finds that Mr. Brown's Motion for Compassionate release is properly before it, the Court concludes that release is not warranted for two reasons. First, Mr. Brown has failed to establish that his medical conditions are severe enough to constitute "extraordinary and compelling circumstances" that could warrant his release under the First Step Act. And second, the Court concludes that even if Mr. Brown had established the existence of extraordinary and compelling circumstances, the Court's consideration of the factors set forth in 18 U.S.C. § 3553(a) yields the conclusion that release is not warranted because the Defendant's criminal history and the length of time remaining on his sentence weigh against release.

Accordingly, the Defendant's Motion for Release Pursuant to 28 U.S.C. § 2255 is DENIED, and Defendant's Motion for Reduction in Sentence pursuant to § 3582(c)(1)(A)(i) at ECF No. 109 is also DENIED without prejudice subject to its reassertion should circumstances warrant.

I.    **FACTUAL BACKGROUND**

After Mr. Brown sold approximately two ounces of cocaine to a confidential informant in February 2014, police obtained and executed a search warrant at Brown's residence. There, police located over 700 grams of cocaine, scales, "owe sheets", $800 in cash, a "pistol-grip" shotgun, and shotgun ammunition. (PSR ¶¶ 10-11.) Mr. Brown was arrested and charged in October 2015 by Complaint with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1)

and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1). Mr. Brown waived his preliminary and detention hearings and was ordered detained pending trial.

A three-count Information was filed in the Western District of Pennsylvania on April 2016 charging Brown at Count One with Distribution of a Quantity of a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); at Count 2 with Possession With Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii); and at Count 3 with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Mr. Brown pled guilty to all three counts of the Information. (PSR ¶¶ 1-3.)

The Government reports that as part of Mr. Brown's plea agreement, the United States agreed not to file an information under 21 U.S.C. § 851 that would have cited his prior convictions as a basis for increased punishment.[2] The Probation Office determined that Mr. Brown qualified for designation as a career offender and was therefore subject to an applicable guideline range of 262–327 months. (PSR ¶ 75.) However, the parties instead stipulated that the appropriate sentence would be the lower term of 10 years imprisonment.

On December 30, 2020, Mr. Brown submitted an Inmate Request for Compassionate Release Consideration Form to the FCI Loretto "Unit Team" in which he cited his high blood pressure and sleep apnea as health conditions justifying his release. (ECF No. 59-1.) The facility's Warden denied Mr. Brown's request on January 11, 2021, determining Mr. Brown was not eligible for Compassionate release based on his medical conditions. (ECF No. 59-1, at 1.) On May 6, 2021,

---

[2] These include several adult convictions for drug possession and one for theft. (PSR ¶¶ 32-38.)

3

Mr. Brown also filed a habeas petition requesting release pursuant to § 28 U.S.C. 2255 based on several alleged constitutional violations.

Mr. Brown is currently incarcerated at Federal Correctional Facility (FCI Loretto). The Bureau of Prisons (BOP) reports that he has an anticipated release date of May 16, 2024. www.bop.gov/inmateloc/.

## II. DISCUSSION

First, the Court concludes that Mr. Brown's habeas petition is untimely because it was filed outside of the 1-year statute of limitations in 28 U.S.C. § 2255. Second, the Court determines that although Mr. Brown's compassionate release motion is properly before it, release is inappropriate at this time because Mr. Brown fails to establish that extraordinary and compelling circumstances exist warranting such a release, and because the Section 3553(a) factors continue to support the imposition of Mr. Brown's original sentence.

### A. Section 2255 Motion

Mr. Brown's § 2255 motion and the record of proceedings plainly demonstrate that Mr. Brown is not entitled to relief because his motion is untimely. Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack an otherwise final sentence if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was imposed in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A petitioner bears the burden of demonstrating his right to relief under § 2255. *Randle v. United States*, 954 F. Supp. 2d 339, 349 (E.D. Pa. 2013). A district court may deny a § 2255 motion without an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner

4

is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations period for § 2255 motions that runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Under Third Circuit precedent, "[i]f a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). The Federal Rules of Appellate Procedure provide that a in a case where the government does not appeal, the defendant's notice of appeal must be filed in the district court within 14 days after the entry of the judgment or the order being appealed. Fed. R. App. P. 4(b)(1)(A)(i).

Here, Mr. Brown entered his guilty plea on April 14, 2016 and was sentenced on August 9, 2016. (ECF Nos. 29, 45.) Therefore, under the Federal Rules of Appellate Procedure, Mr. Brown had 14 days from August 9, 2016 to file a notice of appeal. Because he did not appeal, his judgment of conviction became final on August 23, 2016. Under 28 U.S.C. § 2255(f)(1), he therefore had one year from that date, or until August 23, 2017, to file his habeas petition. Mr. Brown filed the instant habeas petition on May 6, 2021, well outside of that one year statute of limitations. Mr. Brown's motion is therefore untimely and statutorily barred by AEDPA.

Mr. Brown does not attempt to present any circumstances in the motion that indicate that the AEDPA's limitations period should be equitably tolled. *See Miller v. New Jersey State Department of Corrections*, 145 F.3d 616, 618–19 (3d Cir. 1998). In rare instances, a court may exercise its equitable powers to toll AEDPA's one-year statute of limitations period. *See Holland v. Florida*, 560 U.S. 641, 645 (2010). Equitable tolling is proper only where a petitioner shows (1)

5

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Id*. at 649; *see Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) ("equitable tolling is appropriate when principles of equity would make the rigid application of a limitation period unfair"). But here, Mr. Brown did not file an appeal or any post-trial motions and does not contend that extraordinary circumstances that prevented him from timely filing his § 2255 motion until almost four years after the statute of limitations expired. The Court therefore finds that application of the statute of limitations to Mr. Brown's motion is not contrary to principles of equity.

Because the Court concludes that the motion and record before it conclusively show that Mr. Brown is not entitled to relief, Mr. Brown's motion for relief under § 2255 is denied and no no certificate of appealability will issue.

### B. Compassionate Release Motion

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States,* 560 U.S. 817, 819 (2010). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

1. <u>Administrative Exhaustion</u>

To reach the merits of Mr. Ingram's motion, the Court must first determine that Mr. Ingram has complied with § 3582(c)(1)(A)'s exhaustion requirement. Before petitioning a court for relief under 18 U.S.C. § 3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden. § 3582(c)(1)(A). The Third Circuit has confirmed that either of § 3582(c)(1)(A)'s options (acting independently of one another) can satisfy the exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (rejecting the argument that a defendant must exhaust the administrative remedy process if the warden denies a request within 30 days of receiving it, because "the statute states that the defendant may file the motion [before a district court] thirty days after the warden receives his request").

Here, Mr. Brown filed his initial motion on December 20, 2020, before he had begun the process of exhausting his administrative rights with the BOP. But after filing, Mr. Brown did submit a compassionate release "consideration form" to the Warden of his facility on December 30, 2020 requesting release based on his health conditions. The Warden denied Mr. Brown's request on January 11, 2021. The Court therefore finds that Mr. Brown's compassionate release motion has been appropriately exhausted under § 3582(c)(1)(A) because 30 days have elapsed since the Warden's receipt of Brown's request for reduction in sentence. *See* 18 U.S.C. § 3582(c)(1)(A). The Court will proceed accordingly to consider his motion's merits.

2. <u>Extraordinary and Compelling Circumstances</u>

Next, the Court must determine whether Mr. Brown's medical conditions, combined with the ongoing COVID-19 pandemic, rise to an "extraordinary and compelling" level so that release might be warranted under § 3582(c)(1)(A)(i).

Section 3582 does not define the phrase "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i), but has not updated the applicable Policy Statement, found in the U.S. Sentencing Guidelines Manual ("the Guidelines"), since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. Apr. 1, 2020).

A question that arises in this matter, and has arisen in other similar cases, is whether, and if so to what degree, the current provisions of the Guidelines and relevant Application Notes at U.S.S.G. § 1B1.13 promulgated by the Sentencing Commission in 2018 are applicable in consideration of this Motion. As a general matter, this Court has been of the view that those provisions of the Guidelines are informative but not controlling and in any event advisory. *See, e.g.*, *United States v. Davidson*, No. 16-00139, 2020 WL 4877255, at *17–18 (W.D. Pa. Aug. 20, 2020). Over the past few months, a number of the regional Courts of Appeals have considered this issue and all but one have held that those Guidelines provisions are not controlling and limiting in the consideration of compassionate release motions. *See United States v. Long*, No. 20-3064, 2021 WL 1972245, at *8–9 (D.C. Cir. May 18, 2021); *United States v. Aruda*, No. 20-10245, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021) (*per curiam*); *United States v. Shkambi*, No. 20-40543, 2021

8

WL 1291609, at *2–4 (5th Cir. Apr. 7, 2021); *United States v. McGee*, No. 20-5047, 2021 WL 1168980, at *12 (10th Cir. Mar. 29, 2021); *United States v. McCoy*, 981 F.3d 271, 281–84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 234–37 (2d Cir. 2020); *but see United States v. Bryant*, No. 19-14267, 2021 WL 1827158, at *13 (11th Cir. May 7, 2021) (holding that § 1B1.13 is an applicable, binding policy statement for all section 3582(c)(1)(A) motions).[3] And in this case and in others in this Court, it has been the position of the United States that § 1B1.13 is so limiting, notwithstanding that those provisions have not been considered or updated by the Sentencing Commission since Congress passed and the President signed into law the First Step Act. *See id.*

This issue is now before our Court of Appeals in a significantly different and perhaps more consequential permutation in *United States v. Andrews*, in which the key issue before that Court is whether a court's discretion to determine and define "extraordinary and compelling reasons" is constrained by U.S.S.G. § 1B1.13 and its commentary, specifically in circumstances when such are asserted to exist due to a gross disparity between a sentence originally imposed and a sentence

---

[3] This Court finds particularly persuasive the portions of Judge Martin's dissent in *Bryant* that observe that applying U.S.S.G. § 1B1.13 and its Application Note 1(D) to compassionate release motions filed not by the BOP but by a defendant would result in an unauthorized sub-delegation of authority to the BOP. *Bryant*, 2021 WL 1827158, at *22. The actual text of the Guideline authorizes the Court when such a motion is pending to reduce a sentence if "extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13(1)(A). But it is only in Application Note 1 (and not in the Guideline itself) that the Sentencing Commission outlined such reasons definitionally, closing with a "catch all" provision, "Other Reasons," in subsection (D). That Application Note provides that such conditions could exist if the Director of the BOP determined that they existed (without any Guideline or Application Note assistance provided) *as to that particular defendant in that particular case*.

This Court finds persuasive the *Bryant* dissent's assessment that giving that provision conclusive force as to a defendant-filed motion would be both an impermissible sub-delegation of authority to the BOP, and would be counter to the purposes of the First Step Act which was aimed at removing the BOP's exclusive role as to such motions, since in a circular fashion it in effect flips the release decision back to the BOP and away from the Court. And beyond that, given that the Guideline itself does not endeavor to define the term "extraordinary and compelling" at all, instead leaving it to an Application Note that drops most of that definitional work into the lap of the Director of the BOP, this Court harbors meaningful doubt that such an approach, and the Application Note itself, would retain vitality in light of the *en banc* decision of our Court of Appeals in *United States v. Nasir*, 982 F. 3d 144, 156–60 (3d Cir. 2020), and its limitations on when the text of an Application Note may permissibly expand the reach of the Guideline itself.

that would be imposed today for the same crime. 480 F. Supp. 3d 669 (E.D. Pa. 2020), *appeal docketed,* No. 20-2768 (3d Cir. Sept. 4, 2020).

This case instead involves a request for relief on the basis of Mr. Brown's current medical conditions. Although it appears that the central issue in *Andrews* is broader and perhaps of greater reach than the central issue in this case, the involved statutory and Guidelines provisions suggest that a defendant's medical conditions are a topic central to the principles that have animated the concept of such release from its first appearance in the law. For our purposes, the only issue that need be addressed and resolved now is whether the referenced Guidelines provisions are controlling and therefore set and limit the scope of the factors that the Court may consider. To that extent, we join the view of the strong majority of the decisions noted above in concluding that the provisions of U.S.S.G. § 1B1.13 and its Application Notes are not limiting in deciding this issue in the context presented here. The provisions of U.S.S.G. § 1B1.13 and its Application Notes do not serve as a binding limitation on the factors or information that this Court may consider in deciding this specific Motion on the grounds presented in this case, but the Court will nonetheless consider them as an advisory part of its analysis in determining the issue now before the Court.

Relevant here, the Application Notes to § 1B1.13 of the Guidelines speak to conditions which would support compassionate release in the form of two (2) different types of medical conditions that can rise to an "extraordinary and compelling" level: (1) terminal illnesses; and (2) non-terminal conditions that substantially diminish a defendant's ability to provide self-care within the correctional environment. *Id.* The Sentencing Commission's Policy Statement suggests that non-terminal medical conditions may constitute extraordinary and compelling reasons if "a defendant is suffering from a serious physical or medical condition . . . that substantially diminishes

the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, cmt. n.(1)(A)(ii).

Here, Mr. Brown's *pro se* Motion for Compassionate Release reports Mr. Brown's concerns about the prevalence of COVID-19 cases in his facility and argues that he should be released because he suffers from high blood pressure and sleep apnea. (ECF No. 53.) The Court finds that Mr. Brown has failed to show that these conditions constitute extraordinary and compelling reasons justifying his release, either alone or as factors increasing his risk of contracting severe illness from COVID-19.

First, the Court finds that Mr. Brown's high blood pressure, or hypertension, does not constitute an extraordinary and compelling circumstance justifying his release. Mr. Brown's medical records confirm that he suffers from hypertension. (ECF No. 60, at 4.) The CDC website currently classifies certain listed "[h]eart conditions" as conditions that "can" increase one's risk of severe illness from COVID-19. Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://bit.ly/2TVCRon (updated May 13, 2021). Specifically, the CDC notes that "[h]aving heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and *possibly* high blood pressure (hypertension) *can* make you more likely to get severely ill from COVID-19." *Id.* (emphases added). Courts have determined that systemic hypertension alone does not pose an extraordinary and compelling risk of contracting severe COVID-19 where it is "stabilized" and appropriately managed by the BOP. *United States v. Hammond*, No. 18-184, 2020 WL 2126783, at *4 (W.D. Pa. May 5, 2020). Therefore, because the CDC provides only that systemic hypertension "possibly" "can" raise one's risk of contracting severe illness from COVID-19, and because Mr. Brown does not argue that the BOP is not

appropriately treating his hypertension, the Court finds that Mr. Brown's hypertension does not rise to an "extraordinary and compelling" level that could justify his release.

The CDC also does not list sleep apnea as a condition that can cause a person to be more likely to get severely ill from COVID-19. Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://bit.ly/2TVCRon (updated Apr. 29, 2021). Mr. Brown did also assert in his motion that he used a CPAP machine for his sleep apnea "until it was taken due to [] COVID-19." (ECF No. 53, at 1.) Mr. Brown's BOP medical records clarify that the BOP would have required Mr. Brown to move housing units to continue his CPAP treatment in order to comply with BOP Guidance on "Aerosol Generating Procedures." (ECF No. 60, at 54.) Although health services personnel advised him of the risk of refusing treatment, Mr. Brown advised that he did not want to change housing and refused CPAP therapy against medical advice. (ECF No. 60, at 54.) Therefore, the Court concludes that Mr. Brown's sleep apnea does not rise to an extraordinary and compelling level that could justify his release, and that the BOP has provided appropriate treatment for that condition.

Finally, although the Court concludes that Mr. Brown's December 2020 *pro se* motion correctly advised the Court that FCI Loretto was experiencing an increase in active COVID-19 cases, that risk has since dissipated: The Office of Inspector General's Facility-Level BOP COVID-19 trend map shows that FCI Loretto experienced a peak of 620 active reported cases on December 14, 2020, before reported active inmate cases decreased to zero on January 1, 2021. *See Facility-Level BOP COVID-19 Trends*, Office of the Inspector General, https://bit.ly/38nTixc (accessed Aug. 5, 2021). FCI Loretto consistently reported zero active inmate cases in the following months, with the exception of 14 cases reported in early May 2021; the facility has reported zero cases since May 29, 2021 and the BOP website confirms that FCI Loretto currently has no inmates or staff with active COVID-19 infections. *See* www.bop/coranvirus. Finally, the

vaccination administration process is well underway at FCI Loretto: 621 out of 767 inmates have been vaccinated, as have 133 staff members. *Id.*; Population Statistics, *Federal Bureau of Prisons*, https://bit.ly/3qmSRf1 (last updated Aug. 5, 2021). FCI Loretto's report of no current active infections and the facility's high vaccination rate indicates that Mr. Brown's facility is currently successfully mitigating the risk of Co=OVID-19 infection.

Mr. Brown has therefore not shown that his health conditions – either alone, or in combination with the risks posed by the COVID-19 pandemic – "substantially diminish" his ability to provide self-care within the correctional facility environment, even in the context of COVID-19. They therefore do not rise to the "extraordinary and compelling" level that the statute requires.[4]

  3. Section 3553(a) Factors

Finally, even if Mr. Brown had established the existence of extraordinary and compelling circumstances based on his medical conditions, the Court would still deny his Motion based on a consideration of the § 3553(a) factors. Even when a Court determines that an extraordinary and compelling reason might warrant a defendant's release, the Court must also consider whether release is appropriate in light of the factors set forth in § 3553(a). Specifically, "in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling' reasons warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020). The Third Circuit has confirmed that the

---

[4] Mr. Brown's medical records also reflect that Mr. Brown refused the Pfizer-BionTech COVID-19 vaccine. (ECF No. 60, at 72.) Because the Court concludes that no extraordinary and compelling circumstances would exist based on Mr. Brown's health conditions even if he did not receive a vaccine, the Court determines that it is not necessary to reach the question of Mr. Brown's vaccine refusal. *See United States v. Arrick*, 2021 WL 1588784, at * 2 (S.D. Ohio Apr. 22, 2021). Here, Mr. Brown's existing conditions do not elevate his risk of contracting severe illness from COVID-19. And the fact that 80% of the inmates at Mr. Brown's facility are vaccinated mitigates the risk of an outbreak and provides unvaccinated inmates like Mr. Brown with substantial protection from infection.

determination of whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the district court. *United States v. Jones*, No. 12-cr-38, 2020 WL 3871084, at *4 (W.D. Pa July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. June 26, 2020)). That discretion includes the district court's ability to consider the length of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31.

Here, the Court concludes that the Section 3553(a) factors continue to support the sentence as originally imposed. First, Mr. Brown's conduct in the instant case was serious: law enforcement recovered from Mr. Brown's residence over 700 grams of cocaine, scales, and cash, indicating a clear intent to distribute a large quantity of cocaine. And Mr. Brown also has a thirty-year criminal history, including several felony convictions for possession with intent to distribute illegal narcotics. (PSR ¶¶ 32-49.) Many of those offenses were committed while Mr. Brown was on probation for previous crimes. *Id.* ¶¶ 33, 34, 35, 37. The Court therefore agree with the Government that Mr. Brown's criminal record indicates that there is a high risk of recidivating. And given that Mr. Brown's prior convictions and terms of imprisonment have not deterred or rehabilitated him from further criminal conduct thus far, the Court concludes that a sentence reduction will not deter Mr. Brown or serve to protect the public. (ECF No. 59, at 16.)

Mr. Brown's *pro se* Motion does not discuss § 3553(a) factors, except by arguing that he has served over half of his sentence. (ECF No. 53, at 1.) But it is notable to the Court that Mr. Brown's expected release date is not until May 2024. This is nearly nineteen months from now and constitutes a significant amount of Mr. Brown's overall sentence. *See* https://www.bop.gov/inmateloc/ (reflecting that Mr. Brown's current release date is May 16, 2024.) Considering Mr. Brown's sentence

completion, as well as his criminal record and prior failures to comply with supervised release conditions, the Court concludes that the remainder of the ninety (90) month sentence remains necessary to adequately deter Mr. Brown's criminal conduct and protect the public from any further crimes.

### III.    CONCLUSION

The Court concludes that Mr. Brown's § 2255 petition is untimely and therefore barred by AEDPA's statute of limitations. As for Mr. Brown's motion for compassionate release, the Court has considered the relevant factors set forth in § 3582(c), as well as the applicable policy statements issued by the Sentencing Commission and the factors set forth in § 3553(a). Because the BOP has had more than thirty (30) days to consider Mr. Brown's medical conditions, the Court concludes that Mr. Brown has exhausted his BOP administrative obligations, and that his Motion is properly before it. But although Mr. Brown points to medical conditions that he argues warrant his release, the Court concludes that these conditions do not currently rise to an "extraordinary and compelling" level that could support his release, either individually or in combination with the COVID-19 pandemic. And even if Mr. Brown had demonstrated the existence of extraordinary and compelling conditions, the record before the Court counsels the conclusion that he remains a risk to the community such that compassionate release is not appropriate at this time.

Accordingly, Mr. Brown's Motion for Release Pursuant to 28 U.S.C. § 2255 at ECF No. 64 is DENIED, and Mr. Brown's Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) at ECF No. 53 is DENIED without prejudice subject to its reassertion should circumstances warrant.

An appropriate Order will issue.          s/ Mark R. Hornak
                                          Mark R. Hornak
                                          Chief United States District Judge

Dated:  August 9, 2021

cc:    Mr. Levi Eugene Brown (via U.S. Mail)
       All counsel of record (via CM/ECF)